UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                                                         Chapter 7
                                                                                    Case No. 07-72816

JOSEPH YERUSHALMI,


                           Debtor.
--------------------------------------------------------X
JOSEPH YERUSHALMI ,
                                                                                    Adv.Proc.No.

                          Plaintiff,
    -against-

AMNON SHIBOLETH  AND YERUSHALMI,
SHIBOLETH, YISRAELI & ROBERTS, LLP,

                          Defendants.
--------------------------------------------------------X

**COMPLAINT TO AVOID AND RECOVER TRANSFERS
PURSUANT TO SECTIONS 547(b), 550(a) & 502(d) OF THE BANKRUPTCY CODE**

      Plaintiff, Joseph Yerushalmi (hereinafter referred to as "Plaintiff" or "Yerushalmi"), as and for  his complaint (the "Complaint") against Amnon Shiboleth ("Shiboleth") and Yerushalmi, Shiboleth, Yisraeli & Roberts, LLP ("YSYR",  and together with Shiboleth, hereinafter referred to collectively as "Defendants"), alleges upon information and belief as follows:

**NATURE OF THE ACTION**

1. By this action, Plaintiff seeks a monetary judgment resulting from a certain transfer that was made to Defendants prior to the commencement of the respective chapter 11 cases.

2. Specifically, Plaintiff seeks entry of a judgment against Defendants (1) pursuant to 11 U.S.C. 547(b), avoiding the Escrow Transfer (defined below), (2) pursuant to 11 U.S.C. 550(a), directing Defendants to pay Plaintiff's estate an amount to be determined at trial that is not less than the amount of the Escrow Transfer, plus interest and costs; (3) pursuant to 11U.S.C. 502(d), disallowing any claim of Defendants against Plaintiffs; and

1

(4) pursuant to 11 U.S.C. 542, directing Defendants to turn over the proceeds of the Escrow Account.

## JURISDICTION AND VENUE

3. On July 25, 2007 (the "Petition Date"), Plaintiff filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On the Petition Date, Yerushalmi also filed a voluntary petition for Yerushalmi & Associates, LLP., a law firm which he operated ("Y&A").

4. By order dated October 2, 2007, both Yerushalmi's and Y&A's Chapter 11 cases were converted to cases under Chapter 7, rendered upon Defendants' application.

5. Marc A. Pergament was duly appointed the Chapter 7 trustee over Yerushalmi's estate.

6. Allan B. Mendelsohn was duly appointed the Chapter 7 trustee over Y&A's estate.

7. Orders of abandonment were issued by the Bankruptcy Court in both the Yerushalmi and Y&A bankruptcy cases on March 24, 2008 and February 1, 2008, respectively.

8. Plaintiff is authorized to prosecute this adversary proceeding by virtue of a decision rendered by this Court on July 23, 2009 wherein the estate was deemed to have abandoned this action to Yerushalmi.

9. This Court has jurisdiction over this action pursuant to 28 U.S.C.sections 157(b) and 1334(b).

10. Venue is proper pursuant to 28 U.S.C. 1409(a). This is a "core" proceeding under 28 U.S.C. 157(b)(1), (2)(I) and (J).

11. This proceeding has been brought pursuant to Fed.R.Bankr.P. 7001.

## THE PARTIES

12. Yerushalmi is an individual residing at 157 West Shore Road, Great Neck, New York 11024.

13. Non-Party Y&A is a domestic limited liability partnership which formerly conducted business at 17 Barstow Road, Great Neck, New York.

14. Upon information and belief, Shiboleth is an individual with an address located at 333 East 57th Street, #13B, New York, New York.

15. Upon information and belief, YSYR is a registered New York Limited Liability Partnership formerly engaged in the practice of law with its principal offices located at 350 Fifth Avenue, New York, New York 10118.

## FACTUAL BACKGROUND

16. At all relevant times, Yerushalmi was, and continues to be an attorney who is admitted to practice law in New York and Israel.

17. From in or about June 1987 to March 31, 1995, Yerushalmi and Shiboleth worked together as partners in the Defendant lawfirm, YSYR.

18. Yerushalmi had a 51% interest in YSYR and Shiboleth had a 49% interest in YSYR.

19. Defendants are insiders of Yerushalmi within the meaning of §101 of the Bankruptcy Code.

20. At all relevant times, Shiboleth was the managing partner of YSYR.

21. Yerushalmi and Shiboleth no longer worked together at YSYR as of March 31, 1995 (the "Dissolution Date").

22. Thereafter, they each continued to practice law separately and independently.

23. Commencing April 1, 1997, Yerushalmi operated his law practice under the name of Y & A.

24. Upon information and belief, on or about April 1, 1997, Shiboleth operated his law practice under the name of Shiboleth, Yisraeli, Roberts & Zisman LLP.

25. On or about January 23, 1998, an action was commenced against Yerushalmi and Y&A by Shiboleth, individually and on behalf of YSYR, in the New York State Supreme Court, County of New York, bearing the Index No. 600350/98, which sought, inter alia, an accounting of YSYR (the "State Court Complaint").

26. The State Court Complaint primarily sought to recover fees obtained from two of Yerushalmi's clients, NSN and Phoenix, which were collected approximately three to four and one half years after the Dissolution Date.

27. On or about February 25, 1998, Yerushalmi and Y&A filed an answer and counterclaims, which included claims of fraud, breach of fiduciary duty, conversion and other wrongdoing on the part of Shiboleth, and also sought an accounting of YSYR.

28. By order dated March 7, 2002, upon consent of the parties, the issue of an accounting was referred to a special referee to hear and determine (the "Accounting Action").

**The Escrow Account**

29. The parties to the Accounting Action consented to an order dated February 25, 1998, directing that disputed fees relating to NSN and Phoenix matters be deposited in an escrow account, held by attorneys for both parties, until it was determined who these fees belonged to (the "Escrow Account").

30. On January 19, 1999, fees totaling $112,694 relating to NSN were received into the Escrow Account.

31. On August 17, 1999, fees totaling $901,332 relating to Phoenix were received into the Escrow Account.

32. The proceeds of the Escrow Account are property of the Plaintiff's bankruptcy estate within the meaning of §541 of the Bankruptcy Code.

**The NSN Matter**

33. NSN was a client of Yerushalmi prior to the formation of YSYR and after the Dissolution Date.

34. In 1989, YSYR represented NSN in a series of lawsuits against DuPont mainly for conversion of NSN's proprietary technology, know-how and breach of contract.

35. The initial retainer agreement between NSN and YSYR provided for legal fees calculated on an hourly basis.

36. Subsequently, the retention agreement between NSN and YSYR was converted to a contingency fee arrangement commencing March 1, 1990.

37. YSYR's hourly fees were paid by NSN in full through March 1, 1990.

38. Prior to the Dissolution Date, three different lawsuits filed by YSYR on behalf of NSN were dismissed and lost on appeal. Two of the lawsuits were filed in the State and Federal courts of New York, and a third was filed in the Chancery Court of the State of Delaware.

39. At the Dissolution Date, the NSN proceedings against DuPont were pending and in the discovery stage in the Superior Court of the State of Delaware.

40. After the Dissolution Date, Yerushalmi gave Shiboleth the opportunity to participate in the NSN case, including sharing the expenses, and Shiboleth refused.

41. After the Dissolution Date, Defendants never performed any work on the NSN matter.

42. Upon information and belief, at the Dissolution Date, Defendants believed the NSN matter had little value.

43. After the Dissolution Date, Yerushalmi personally funded hundreds of thousands of dollars on the NSN litigation.

44. After the Dissolution Date, Yerushalmi invested thousands of hours on the NSN litigation.

45. At the Dissolution Date, the NSN case was more of a liability than an asset and it had no value.

46. Upon information and belief, NSN also believed that the likelihood of success on the NSN case at trial was very little.

47. The NSN case went to trial May 1997 in the Superior Court in the State of Delaware.

48. After trial, the jury awarded NSN $6.45 million in damages, plus interest due entirely to Yerushalmi's efforts and investment in the NSN case after the Dissolution Date.

49. In or about January 1998, at the request of the client, the NSN case settled for $6.45 million, excluding interest.

50. As a result of the forgoing, all of the money in the Escrow Account relating to NSN belongs to Yerushalmi .

### The Phoenix Matter

51. Phoenix and its related entities was a major client of Yerushalmi's before and during the existence of YSYR.

52. Yerushalmi exclusively handled all Phoenix related matters at YSYR.

53. Phoenix was a publicly traded Dutch company whose main business was to provide financing to Israeli clients.

54. Commencing in late 1993, the Israeli government and the Israeli banks which were owned by the Israeli government, started to methodically take aggressive efforts to dismantle Phoenix and to eliminate it as a competitor of the Israeli banks which also provided financing to Israeli clients, but at a significantly higher rate.

55. In late 1993, takover proceedings were commenced in the Israeli courts and at the same time, all payments from Phoenix's Israeli clients were restricted.

56. As a result, in or about early 1994, Phoenix became insolvent.

57. At Phoenix's insistence, Yerushalmi fought the hostile takeover of Phoenix by the Israeli banks who were backed by the Israeli government.

58. Defendants did not want YSYR to partake in the fight against the Israeli government and banks and demanded that Yerushalmi stop representing Phoenix. Yerushalmi refused to do so. As a result, Shiboleth and Yerushalmi stopped working together.

59. Shiboleth never performed any services on behalf of Phoenix (either before or after the Dissolution Date) and beginning in early 1994, alienated himself from Phoenix.

60. At the Dissolution Date, Phoenix owed YSYR less than $1 million for legal services.

61. After the Dissolution Date, Yerushalmi succeeded in obtaining confessions of judgment from the management of Phoenix, which were removed shortly thereafter by the Israeli government and banks. The confessions of judgment were filed in the Supreme Court, New York County.

62. After the dissolution date, Yerushalmi collected $197,000 from Phoenix and remitted it to YSYR.

63. After the Dissolution Date, the new management of Phoenix, appointed by the Israeli government and banks, terminated Yerushalmi and YSYR as counsel for Phoenix.

64. The new management of Phoenix refused to pay the outstanding YSYR legal fees and rejected the confessions of judgment. The Israeli District Court confirmed the position taken by the new management.

65. On or about the Dissolution Date, Phoenix was dismantled as planned.

66. As a result, the Phoenix receivable was uncollectible on or about the Dissolution Date and had no value as of that date.

67. After the Dissolution Date, Yerushalmi continued to render legal services to the National Kibbutzim Movement (the "Movement") whose member kibbutzim were major clients of the dismantled Phoenix.

68. After the Dissolution Date, Yerushalmi performed extensive legal services for and on behalf of the Movement that totaled thousands of hours.

69. After the Dissolution Date, Yerushalmi personally expended approximately $200,000 on his representation of the Movement.

70. In August 1999, the Movement paid Yerushalmi's representative in Israel $950,000 in recognition of Yerushalmi's laborious work and dedication to the kibbutzim.

71. Pursuant to the February 25, 1998 consent order in the Accounting Action, $901,000 out of these monies were deposited into the Escrow Account under the supervision of Yerushalmi's and Shiboleth's attorneys and are property of his estate.

72. The monies paid by the Movement which were deposited into the Escrow Account belong to Yerushalmi.

**The Accounting Action Judgment**

73. After a trial before the special referee, a Decision and Order dated November 28, 2006 was rendered in favor of Defendants in the Accounting Action.

74. The decision in the Accounting Action resulted in a judgment which was entered on March 7, 2007 in favor of Shiboleth and YSYR in the total amount of $3,540,045.91 as follows: (i) $2,036,272.09 was charged against Yerushalmi; and (ii) $1,503,773.82 was charged against Yerushalmi and Y&A, jointly and severally (the "Judgment").

75. The special referee also ordered that the funds held in the Escrow Account relating to NSN and Phoenix which totaled approximately $1.2 million were to be released to Defendants.

76. Yerushalmi and Y&A filed a timely Notice of Appeal to the Appellate Division, First Department (the "Appeal").

77. Shortly thereafter, Yerushalmi and Y&A moved before the Appellate Division, First Department for a discretionary stay of the enforcement of the Judgment and to prevent the release of the funds from the Escrow Account.

78. On March 19, 2007, the Appellate Division granted an interim stay with respect to the release of the funds from the Escrow Account.

79. Defendants objected to the interim stay and represented that they would not release the funds until the Appellate Division rendered its decision with respect to Yerushalmi's and Y&A's application for an injunction with respect to the Escrow Account.

80. By Decision and Order dated May 1, 2007, the Appellate Division, First Department lifted the interim injunction.

81. Upon information and belief, the funds in the Escrow Account totaling approximately $1.2 million, comprising the NSN and Phoenix fees (together with accumulated interest), were released to Defendants on May 1, 2007 in partial payment of the Judgment.

82. Following entry of the abandonment orders referred to previously herein, Plaintiff and Y&A perfected the Appeal of the Judgment.

83. By Decision and Order dated January 6, 2009, the Appellate Division, First Department, vacated the monetary award of the Judgment and remanded the two biggest monetary issues of the Accounting Action, NSN and Phoenix, for further determination.

84. The proceeds of the Escrow Account have not been returned to Plaintiff.

### FIRST CLAIM FOR RELIEF
### (Avoidance of Preferential Transfers)

85. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "85" above as if fully set forth herein.

86. The release of approximately $1.2 million dollars from the Escrow Account to Defendants constituted a transfer in accordance with section 101(54) of the Bankruptcy Code (the "Escrow Transfer").

87. Upon information and belief, the Escrow Transfer was made on or within ninety (90) days of the Petition Date, or within one year before the Petition Date.

88. Upon information and belief, the Defendants were creditors of the Plaintiff at the time when the Escrow Transfer was made.

89. Upon information and belief, Defendants were insiders of the Plaintiff in accordance with §101(31) of the Bankruptcy Code.

90. Upon information and belief, the Escrow Transfer was made to, or for the benefit of Defendants.

91. Upon information and belief, the Escrow Transfer was made for, or on account of, an antecedent debt owed to the Defendants by the Plaintiff.

92. Upon information and belief, the Escrow Transfer was made when the Plaintiff was insolvent.

93. Upon information and belief, the Escrow Transfer enabled the Defendants to receive more than Defendants would otherwise have received upon liquidation of Plaintiff's assets.

94. As such, and pursuant to section 547(b) of the Bankruptcy Code, Plaintiff may avoid the Escrow Transfer.

95. By virtue of the above, Plaintiff is entitled to a judgment against the Defendants avoiding the Escrow Transfer and recovering the approximate sum of $1,200,000 plus interest and costs pursuant to §547 of the Bankruptcy Code.

**SECOND CLAIM FOR RELIEF**
**(Recovery of Value of Transfers)**

96. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "95" above as if fully set forth herein.

97. In the event judgment is entered avoiding the Escrow Transfer, Plaintiff may to recover the value of that transfer from Defendants pursuant to §550(a) of the Bankruptcy Code.

98. By virtue of the above, Plaintiff is entitled to judgment against Defendants pursuant to §550(a) of the Bankruptcy Code, to the extent the Escrow Transfer is avoided under §547 of the Bankruptcy Code.

### THIRD CLAIM FOR RELIEF
### (To Disallow Claims Pursuant to 11 U.S.C. 502(d))

99. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "98" above as if fully set forth herein.

100. Defendants were the initial transferees of the Escrow Transfer or the immediate or mediate transferees of such initial transferee or the person for whose benefit the Escrow Transfer was made.

101. Pursuant to 11 U.S.C. 502(d), any claim of the Defendants against Plaintiffs must be disallowed until such time as Defendants pay to Plaintiff an amount equal to the aggregate amount of the Escrow Transfer, together with interest.

### FOURTH CLAIM FOR RELIEF
### (Turnover of Property of the Estate)

102. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "102" above as if fully set forth herein.

103. The proceeds of the Escrow Account constitute property of the Debtor's estate pursuant to Section 541(a) of the Bankruptcy Code.

104. Defendants have wrongful possession and control over the funds released from the Escrow Account.

105. Pursuant to sections 541 and 542 of the Bankruptcy Code, the Debtor is entitled to judgment against Defendants directing the turnover of the proceeds of the Escrow Account in an amount no less that $1.2 million dollars, plus appropriate interest thereon.

WHEREFORE, Plaintiff respectfully requests that the Court enter Judgment in Plaintiff's favor and against Defendants:

(a) avoiding the Escrow Transfer to Defendants pursuant to 11 U.S.C. 547;

(b) awarding Plaintiff judgment in an amount equal to the Escrow Transfer and directing Defendants to immediately pay Plaintiff an amount equal to the Escrow Transfer pursuant to 11 U.S.C. 550(a), together with interest;

(c) disallowing any claim of Defendants against Plaintiff;

(d) for turnover of the proceeds received by Defendants from the Escrow Account funds pursuant to 11 U.S.C. 542; and

(e) granting Plaintiff such further relief as this Court deems proper.

Dated: Mineola, New York
      July 23, 2009

            Forchelli, Curto, Crowe, Deegan,
            Schwartz, Mineo & Cohn, LLP
            Attorneys for Plaintiff

By:   /s/Gary M. Kushner
      Gary M. Kushner
      A Partner of the Firm
      330 Old Country Road
      Mineola, New York 11501
      (516) 248-1700